Kamen Soap Products Co., Inc. v. Commissioner.
Kamen Soap Products Co. v. Commissioner
Docket No. 51433.
United States Tax Court
T.C. Memo 1956-157; 1956 Tax Ct. Memo LEXIS 139; 15 T.C.M. (CCH) 777; T.C.M. (RIA) 56157; June 29, 1956
*139 1. Depreciation. - Petitioner's stock and the stock of Globe, another corporation whose premises were occupied by petitioner, is owned by two individuals, husband and wife, who were the sole partners in a partnership to whose business petitioner succeeded. In 1944, the partnership entered into a lease with Globe. In 1945, the partnership constructed a soap spray tower to which petitioner made additions. Depreciation allowance for the tower and other facilities used in petitioner's business was deducted over a period of 25 months which is alleged to be the remainder of a lease. Respondent computed depreciation over the useful life of the tower and other items. Upon the facts, held, that in the taxable year petitioner's tenancy was for an indefinite period rather than under an alleged lease and that all of the depreciation in dispute should be computed on the basis of the useful life of the tower and other facilities. 2. Rent. - The rent paid by petitioner to another corporation was determined by petitioner's president who with his wife owned all of the stock of both corporations. The Commissioner determined that part of the rent was not reasonable and disallowed deduction thereof. *140 Held, upon the facts, that petitioner has the burden of proving that the amount which it seeks to deduct is what it would be required to pay, dealing at arm's-length, for continued occupancy, and that petitioner failed to prove that such required rent would be more than respondent determined. 3. Ordinary and necessary business expense. - Held, upon the facts, petitioner is entitled to deduct $2,000 as an ordinary and necessary business expense under section 23(a)(1)(A), 1939 Code. Samuel E. Hirsch, Esq., 1501-38 South Dearborn Street, Chicago, Ill., for the petitioner. William A. Schmitt, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the fiscal year ended January 31, 1947, in the amount of $23,915.56. Some of the Commissioner's determinations are not contested. There are three issues for decision, as follows: (1) Whether certain expenditures for facilities used in petitioner's business, including a spray tower built for use in the manufacture of soap powders, should be amortized over a period of 25 months which is the part of the term of a lease under which petitioner *141 alleges it occupied the premises where the facilities were constructed and installed, or should be depreciated over the useful life of the facilities, namely, 15 and 10 years. (2) Whether petitioner is entitled to deduction of $50,000 for rent, $5,250.03 for services provided by the owner of the premises occupied by petitioner, or $35,912.52 which the Commissioner has allowed. (3) Whether petitioner is entitled to deduction of $2,000 as an ordinary and necessary business expense. Findings of Fact General facts. - Petitioner is a New York corporation, organized in January 1946, which operates a soap manufacturing factory in Ohio, and it maintains its general sales office in New York City. Petitioner filed its return with the Collector of Internal Revenue for the second district of New York. Petitioner keeps its books and makes its income tax return on an accrual method of accounting and on the basis of a fiscal year beginning on February 1 and ending on January 31. All of petitioner's stock is owned by Abraham L. Kamen and his wife, Rae Kamen, who are, respectively, the president and secretary of petitioner. The business of petitioner is the manufacture and sale of several types *142 of soap, dishwashing compounds, powdered soap, detergents, allied chemicals, glycerine, and related products. Petitioner began operations of its business on February 1, 1946. The taxable year involved in this case is petitioner's first year of operations which ended on January 31, 1947. Prior to the organization of the petitioner corporation in January 1946, there was a partnership which did business under the name of Kamen Soap Products Co., in which the sole partners were Abraham and Rae Kamen. The partnership was formed during 1942. It kept its books on an accrual basis for a fiscal year from April 1 to March 31. It carried on a business of manufacturing soap, soap powders, allied chemicals, and related products. Petitioner took over and continued the operation of that business, and acquired all of the assets and liabilities of the partnership which was dissolved thereafter. Petitioner is still in business. Globe Crayon Co., Inc. (hereinafter called Globe), is a corporation, all of whose stock was and still is owned by Abraham and Rae Kamen. Globe was in existence and in business in 1944, if not before, and it continued in business through 1948, up to the present. Globe's business *143 is the manufacture and sale of toys and of crayons for school and industrial use. Globe owns a factory, several buildings, and the realty on which the factory and buildings are located. Globe's factory and entire plant is located in the town of Barberton, which is near Akron, Ohio. Globe's factory and plant comprise a glycerine factory, four, or more, buildings constructed of concrete and steel, and storage tanks. The land where Globe's plant is located covers 11 1/2 acres. The area of all of the buildings is about 113,000 square feet. There are railroad sidings located on the area which extend around and service each building. The partnership, Kamen Soap Products Co., carried on its business in part of Globe's buildings, using 80,000 square feet. Petitioner carried on its business in the same area during the taxable year and thereafter. In 1948, petitioner purchased all of Globe's property. The space at Globe's premises which petitioner occupied and the facilities which petitioner used during the taxable year and thereafter were the following: 80,000 square feet of space in the buildings and premises owned by Globe, i.e., factory space; 110,000 gallons of street storage tanks; *144 old boiler house with facilities for splitting fats and evaporating glycerine liquid; all pipes and pumps in and out of buildings; land and outside driveway; and building and facilities on roof to mail plant, dust collectors, and air compressors. Petitioner also had the use of railroad sidings, and the services of firemen and engineers for the steam power plant. Petitioner shared with Globe office help and the following utilities and services: light, heat, power, water, and telephone. Petitioner paid Globe the total sum of $55,250.03 for rent and use of facilities and services during the taxable year, February 1, 1946 to January 31, 1947. Abraham Kamen determined the amount to be paid by petitioner to Globe in the taxable year. In its last income tax return, which was for its fiscal year beginning on April 1, 1945, the partnership took a deduction for rent in the amount of $52,962. The return and record does not show how much of this amount was paid for rent of the partnership's general sales office in New York. However, the rent for the New York office which petitioner paid for 1946 amounted to around $3,100. There was a written lease made on April 1, 1944, between Globe and *145 the partnership, which was executed by Abraham Kamen, for Globe, and Rae Kamen, for the partnership. It was provided in the lease agreement that the term of the lease was for three years, from April 1, 1944 to March 31, 1947, and the partnership was given an option to renew the lease, on the same terms and conditions, for an additional period of two years to March 31, 1949, the option to be exercised on or before March 31, 1947. The lease provided that the partnership should pay in equal monthly installments $50,000 per year for the rented space; and in addition, $24,000 per year for building maintenance, use of railroad sidings, and services of firemen and engineers in the steam power plant; and in addition, $7,500 per year for plant watchmen and supervision of all facilities. The total amount of the specified payments was $81,500 per year. It was provided in the lease that the cost of light, heat, water, power, telephone, telegraph, and office help would be shared by the partnership and Globe on such basis as should be equal to the ratio of sales made by the partnership and sales made by Globe in each year during the period of the lease. Payment of a share of these expenses was to *146 be in addition to the above charges. The space and area described in the lease as rented to the partnership were 80,000 square feet of factory space, 110,000 gallons of street storage tanks, old boiler house facilities for splitting fats and evaporating glycerine liquid, all pipes and pumps in and out of building, land and outside driveway, facilities on roof to mail plant, dust collectors, air compressors, railroad sidings, and firemen and engineers for steam plant. Abraham Kamen determined the amounts of the various charges which were set forth in the 1944 lease. The option to renew the lease was never exercised by either the partnership or the petitioner. Petitioner did not pay Globe the rent specified in the lease of the partnership. Petitioner did not take over the partnership's lease; there was no written assignment of the lease to petitioner; petitioner abandoned the written lease of April 1, 1944. Additional facts about the rent paid by petitioner in the taxable year are set forth hereinafter. The period during which petitioner could occupy part of Globe's premises and use its facilities was an indefinite period. As of January 31, 1947, petitioner did not have any intention *147 of moving from Globe's premises, and Globe had no intention of requesting petitioner to move. Depreciation: In 1944, the United States Navy asked for bids for the manufacture of a soap powder, or powdered soap, given the specification number, 606-a. The partnership, Kamen Soap Products Co., was told that the Navy would require large quantities of the soap powder. In order to produce large quantities thereof, the partnership needed to increase its productive facilities, i.e., to have a spray tower, which is also called a dehydrating form. Some of the larger soap manufacturers have spray towers, such as Procter and Gamble, Colgate, and Lever Brothers. The partnership advised the Navy that it would construct a spray tower. The partnership received several contracts from the Navy to make powdered soap. During a period ending January 31, 1946, the partnership received 12 Navy contracts for powdered soap aggregating $785,541.51, the amounts of individual contracts being variously about $5,000, $17,000, $21,000, $30,000, $44,000, up to $80,000. The three largest contracts were for $96,271, $170,662, and $209,730. In 1944 the petitioner began construction of a round spray tower on Globe's *148 premises in Barberton. The tower when completed was 90 feet high and 90 feet by 30 feet in diameter. It was made of hollow tile and brick and rested on a foundation 9 feet underground. The productive capacity of the spray tower is 35,000 pounds of soap which can be dried in 8 hours. Use of the spray tower effects a saving in labor costs. In 1944, labor was scarce and there was considerable labor turnover at the Kamen plant. In the making of soap in the tower, liquid soap is sprayed inside the tower through nozzles. Compressors and steam are used to provide the force needed to spray the liquid soap through nozzles. In the first year of operation, air conditioning was used inside the tower. Cold air was blown inside the tower through ducts by fans. Cold air crystalized the spray of soap; soap crystals fell into hoppers in finished form. Thereafter the soap powder was aged; then removed by air force to packaging machines. Packaging of the soap powder is done by machines. The spray tower was in use before the end of 1945. Thereafter, various improvements in and additions to the tower were made. The partnership, Kamen Soap Products Co., spent for the construction of the spray tower, $21,649.65, *149 in its fiscal year April 1, 1944 to March 31, 1945. It spent $33,708.10, for improvements and additions in its fiscal year beginning April 1, 1945 until the partnership terminated operations as of January 31, 1946, when the petitioner corporation succeeded to the business. Thus, the total expenditures by the partnership amounted to $55,357.75. The petitioner expended $37,438.92 for improvements and additions to the tower during its first year of operations beginning February 1, 1946 and ending January 31, 1947. Petitioner's expenditures brought the cost of the tower to $92,796.67. In 1946, when orders from the Navy fell off, petitioner decided to install heat treating facilities in the tower to enable it to manufacture other types of soap powders as well as detergents by an evaporation process requiring the use of 400 degrees F. heat. Petitioner obtained Government orders for a heat-processed soap. The installation of heat chambers cost $14,379. As is set forth hereinafter, there was a further expenditure of $990 on the heating facilities during the taxable year. The partnership did not request, and did not receive, a Certificate of Necessity from the Government for the spray *150 tower under which it would be entitled to depreciation of the tower over a short period; and the petitioner, the corporation, did not request or receive such certificate. The total spent on the spray tower by the partnership and by petitioner was $107,175.67, including the expenditure of $14,379 for the heating facilities, but not including $990, additional, which was spent on the heat treating installation which is referred to hereinafter. The partnership, in its returns for its fiscal years ended March 31, 1945 and 1946, took deductions for depreciation of the soap tower totaling $18,023.20, on the basis of a useful life of 25 months. Upon audit of these returns, respondent determined that allowable depreciation for 1944-1945 and 1945-1946 amounted to only $3,208.64. The members of the partnership accepted this determination. In its return for the taxable year, petitioner deducted as part of cost of goods sold, the $14,379 which it spent for the installation of the heat treating facilities in the spray tower. This expenditure was a capital expense subject to depreciation. In the taxable year petitioner spent $10,338.58 for the following machines and equipment: 1
Carton sealing machine
$ 500.00
2
Pumps to carry liquid soap to
soap tower
948.11
3
Soap frames
2,359.10
4
Soap tower heating equip., parts
and adjustments
990.00
5
Soap milling machine
3,020.34
6
Soap milling machine
1,182.72
7
Box nailing machine
758.71
8
Box nailing machine
579.60
$10,338.58
*151 The soap frames were used in the making of bars of yellow and brown soap. Petitioner sold a large volume of this soap in 1946, 1947, and 1951. In 1951, during the Korean war, petitioner received an order for 6,000,000 pounds of this type of soap from the Government. Petitioner deducted the $10,338.58 spent for the above items as "repairs." All of these expenditures were capital expenditures subject to depreciation. Neither the above items, nor the soap tower, became obsolete in the taxable year. Petitioner's business from Government orders for soap declined in the early part of 1947, but as of January 31, 1947, petitioner did not know what volume of such orders to expect. Petitioner received orders from the Veteran's Administration in the taxable year for soap known as No. 596-(a) which required heat processing. In the fiscal years ended January 31, 1948 and 1949, petitioner received Government orders in the respective amounts of $25,000 and $20,000. In 1950 and 1951, petitioner received Government orders, in each year, for from $15,000 to $25,000. In the last year of its business, the partnership's gross sales amounted to $1,105,365.10, and the net income reported was $255,502.55. *152 Petitioner's gross sales for the fiscal years ended January 31, 1947 to 1949, were as follows: Fiscal year ended
Gross sales
January 31, 1947
$1,434,003.50
January 31, 1948
1,549,735.02
January 31, 1949
1,786,241.29
In its return for the taxable year, petitioner reported net income of $64,002. Petitioner makes a large number of products of various kinds. It has continued to make soaps, powdered soaps, dishwashing compounds, detergents, glycerine, fatty acids, and related products. Rent. - Globe purchased the Barberton property, land and buildings, in 1938 or 1939 for about $138,000, and in 1946 the adjusted basis after depreciation was about $65,300. When the 1944 lease was executed by the Kamen partnership and Globe, the soap tower had not been constructed, but the partnership anticipated receiving Government contracts and constructing the soap tower. The total rent of $81,500 which was specified in the lease as annual rental was determined by Abraham Kamen. There was no clause in the 1944 lease permitting any changes in the total rent of $81,500 or in any of the additional rental charges such as $24,000 and $7,500. On a monthly basis, the prescribed *153 rent was $6,791.66. Globe retained the use of 33,000 square feet of its premises out of 113,000 square feet. In the last period of its business, the Kamen partnership, whose fiscal year began on April 1, which also is the date of the lease of April 1, 1944, occupied the 80,000 square feet of Globe's premises for 10 months, through January 1946. For the 10-month occupancy, the partnership paid Globe total rental of not more than $52,962, or a lesser amount if part of that sum was paid for rental for the New York sales office of the Kamen partnership, which is not shown by the record. The partnership defaulted in and did not comply with the rental requirements of the 1944 lease with Globe. The partnership paid Globe for occupancy from April 1, 1945 through January 31, 1946, less than the leasehold rental because Abraham Kamen determined the amount of rent which the partnership should pay Globe for that 10-month period. Kamen, as a partner, did not comply with the rental requirements of the 1944 lease because he regarded the business of Globe and of the partnership as a "one-man" business and he determined that the partnership should pay Globe less than $6,791.66 per month during the *154 period above stated. If the lease had been complied with, the partnership would have paid Globe $67,916.60. The Kamen partnership was not required to pay for the continued use and possession of part of Globe's premises rental at the rate of $81,500 per year, or $6,791.66 under the arrangements which Abraham Kamen determined, and it was not required to pay Globe annual rental on the basis of any of the parts of $81,500 which, under the 1944 lease, aggregated $81,500. The 1944 lease was abandoned by the Kamen partnership and Globe as of April 1, 1945, at least. The 1944 lease did not represent an arm's-length agreement between the partnership and Globe. For petitioner's use and occupancy of part of Globe's premises, during the period February 1, 1946 through January 31, 1947, Globe was willing to receive $55,250.03. Abraham Kamen determined the amount of rent to be paid for the taxable year to Globe. The payments of petitioner in the taxable year to Globe were excessive to the extent of $19,337.51. Business expense. - During the taxable year, petitioner paid $2,000 to John Barrett, a former employee of the First National Bank in Akron, Ohio, for professional services in advising *155 petitioner how to compute its costs in preparing bids for Government contracts. Barrett is an accountant. Barrett's services were worth $2,000; this expense was an ordinary and necessary business expense in the taxable year. Opinion HARRON, Judge: There are three issues to be decided as follows: (1) Whether the costs of the spray tower and several machines and pieces of equipment should be depreciated over the period of the useful life of each item, or should be depreciated over a period of 25 months. Under this issue is the question whether petitioner's occupancy of part of Globe's premises was for a term, specified in a lease, ending on March 31, 1947, or was for an indefinite period. (2) What amount petitioner is entitled to deduct for rent paid to Globe. (3) Whether petitioner is entitled to deduct $2,000 as an ordinary and necessary business expense. Issue 1: Depreciation. - Petitioner first contends that its occupancy in the taxable year of part of Globe's premises and its use of some of Globe's facilities were pursuant to the written lease agreement of April 1, 1944, which the partnership and Globe executed in 1944. Petitioner next contends that it is entitled to deduct *156 $47,304.02 in the taxable year for depreciation. The petitioner relies upon the rule that a lessee who makes capital improvements on leased property which are used in his business and are held for the production of income during the term of the lease, may recover his cost by annual charges for depreciation, or by a charge for obsolescence, over the life of the lease. ; ; ; ; ; ; and . Petitioner cites the above cases. Petitioner deducted $47,304.02 for depreciation of $92,796.66 spent on the soap tower, which amount was computed on the basis of recovery of cost over 25 months, the remaining life of a lease executed by its predecessor, the partnership. For the soap tower, the Commissioner disallowed $42,362.54 of the deduction and allowed $4,938.48 as depreciation over a useful life of the tower of 15 years. *157 The tower was started in 1944 and was completed in 1945 after 10 months. The total amount of $92,796.66 was expended during three taxable periods and in different years in the respective amounts of $21,649.65; $33,708.10; and $37,438.92. The period for depreciating costs up to some time in 1945, under petitioner's theory, might be 25 months, the then unexpired part of the lease. But the period for recovering through depreciation the additional costs for improvements, which were incurred subsequently would necessarily be, even under petitioner's theory, less than 25 months. Nevertheless, petitioner has assumed a constant 25-month period for all of the costs even though separate costs were incurred at different times during the years 1944 or 1945, and during 1946. It is necessary at the outset, for clarity, to set forth the way petitioner, in its return, treated other expenditures which are involved under this issue. With respect to the $14,379 which petitioner spent in the taxable year for installing the heat treating facilities in the tower, petitioner treated this expenditure in its return as "engineering service" and included that amount in cost of goods sold. The respondent *158 adjusted this item by disallowing $14,379 as cost of goods sold, by treating the amount as a capital expenditure, and allowing depreciation of the heat treating equipment over the useful life thereof which he determined to be 10 years. Petitioner still contends that $14,379 represents an item of expense, but if it should be held that the item is a capital expenditure, petitioner assumes, under its contentions, that the period of depreciation of this item is 25 months. In the taxable year, petitioner expended $10,338.58 for items of machinery and equipment, which are described in the Findings of Fact, which included $990 to an engineering company for additional parts and work on the heat treating installation in the tower (also referred to herein as the soap tower). The expenditure of $990 was required because of faulty operation of the heating installation, to correct which more parts were installed and corrective work was done. In its return for the taxable year, petitioner deducted the total sum of $10,338.58 as "repairs." The respondent disallowed deduction of the above amount, determining that all of it represented capital expenditures; respondent allowed depreciation on the *159 basis of a useful life of 10 years for the various items of machinery and equipment involved. Petitioner still contends that all of the expenditures aggregating $10,338.58 are deductible in full as repairs. However, if it should be held that they are capital expenditures, petitioner, under its theory, assumes that the period for depreciation of these items is 25 months. As stated above, respondent has allowed deduction for depreciation of the soap tower in the amount of $4,938.48, and he has allowed depreciation of capital expenditures of $14,379 and $10,338.58. Altogether, respondent has allowed depreciation deductions totaling $21,754.44, on all depreciable assets, including those in issue, on a composite 15-year basis. Respondent's contentions are as follows: The respondent does not admit that there was a lease, such as petitioner relies upon, which can be recognized as an arm's-length lease between Globe and petitioner. He contends, further, that it is not reasonable to assume that expenditures of over $92,700 for the construction of the spray tower, plus $14,379 for heat treating equipment, representing expenditures of $107,175.67, would have been made upon the basis of *160 a depreciation period of only 25 months. Respondent argues that under the facts, allowance for exhaustion of the cost of the spray tower, and of all of the other items involved should be based upon the remaining useful life of the installations and equipment. He relies upon . He also contends that his determinations are prima facie correct, and that the petitioner has the burden of showing that they are wrong and of presenting evidence from which a proper determination can be made. He cites . First, we consider the arrangements under which petitioner occupied part of the premises owned by Globe. All of the stock of Globe and all of the stock of petitioner is owned by the Kamens. Also, the Kamens were the only members of the Kamen partnership. In this situation, transactions between petitioner and Globe must be carefully scrutinized in considering the issue. We recognize that an agreement between entities having the same stockholders, who are members of a family, will be given effect for tax purposes "if the arrangement is fair and reasonable, judged by the standards of a transaction *161 entered into by parties dealing at arm's length." . Under this issue, petitioner seeks a short amortization period of an assumed 25 months. The period of 25 months is figured (without explanation) from March 1, 1945 to March 31, 1947, the date of the expiration of the term of a written lease entered into by Kamen partnership and Globe on April 1, 1944. The partnership lease is the basis of petitioner's contention because it provided for a definite leasehold term. But the record shows that petitioner did not observe the terms of the 1944 lease. The lease was not formally assigned to petitioner; there was no other written lease between Globe and petitioner; petitioner paid Globe, during the first fiscal year of its existence, rent of only $52,250.03. Petitioner and Globe are still in existence, and petitioner purchased all of Globe's properties in 1948. Petitioner continued to occupy Globe's premises after March 31, 1947. Furthermore, in 1945 the Kamen partnership did not pay the amount of rent required by the 1944 lease. Under the facts and the circumstances here present, there is little to support petitioner's *162 contention that it occupied Globe's premises and used various facilities of Globe under the written lease of April 1, 1944, and, therefore, that there was a leasehold term which ran to March 31, 1947, on the basis of which an amortization period of 25 months or less can be found to be the period over which the costs of the tower and of other equipment properly can be depreciated. Whatever petitioner's arrangements with Globe were in the taxable year for occupying Globe's premises, they were informal, and they were entirely under Abraham Kamen's control. Because of the close relationship of Globe and petitioner, they could make any arrangements which Kamen decided upon. Globe, the partnership, and the petitioner departed from the terms of the 1944 lease. Upon consideration of all of the evidence, it is held, and we find, that the partnership and petitioner abandoned the 1944 lease of the partnership, and that there was an oral arrangement under which the period during which petitioner could use and occupy Globe's premises was indefinite. It follows from the above conclusion that there is no merit to petitioner's contention that there was a leasehold term having an unexpired period *163 of 25 months. The situation here is subject to the rule that where the tenancy is for an indefinite period, the allowance for depreciation should be based upon the life of the depreciable assets. See , and the authorities there cited. It is further concluded that the period of 25 months is not the proper period for the allowance of the exhaustion of the costs of the tower and of the other items involved under this issue because it is unreasonable to believe or assume that the expenditures for the spray tower of $107,175.67 would have been made upon the basis of an amortization period of only 25 months. It is held that costs of the spray tower and of the heat treating installation, $107,175.67, are depreciable over their remaining useful life. Although in its brief petitioner alleges that respondent erred in capitalizing the costs of the heat treating installation and of the machines and various items (not related to the spray tower) which were purchased in the taxable year, petitioner has not presented any argument nor cited any authorities in support of the contention that such costs ($14,379 and $10,338.58) should be "expensed" rather *164 than capitalized. Upon the evidence presented, it is held that both classes of expenditures are capital expenditures which may be recovered through depreciation; it is improper to "expense" these items. See ; 642; ; . For the reasons set forth above, it is held that the costs of the various pieces of machinery and of further work on and parts for the heat treating installation, $10,338.58, are depreciable over the useful life of each item. Respondent has determined that the useful life of the items involved is either 15 or 10 years and the deductions for depreciation which he has allowed are computed on such basis. Petitioner argues that the soap tower, as well as the other items, became uneconomical and unprofitable because of the sharp decrease in Government orders. In connection with this argument petitioner suggests that, in the alternative, all of the deductions claimed under this issue should be allowed as obsolescence. The petitioner used the soap tower and all of the other items during the taxable year. The record shows *165 that petitioner received Government orders in 1951 and 1952 of from $15,000 to $25,000 in each year for which the tower was used. Abraham Kamen testified that use of the soap tower in production has deteriorated "to a point where it does not pay us to operate the tower." That testimony relates to years subsequent to the taxable year and to the present. The meaning of the testimony is not clear. Petitioner did not present any evidence to prove what constitutes profitable operation of the soap tower. Subsequent to the taxable year, petitioner's business was the production of various soaps and soap powders. The adaptability of the plant to the requisites of the orders of various customers is a necessity. The fact that the tower and heating equipment was less useful when large Government orders were not forthcoming does not indicate, of itself, that the facilities became obsolete within the taxable year. Nonuse, alone, is not enough. Cf. , affd. ; ; and . On the point of alleged obsolescence in the taxable *166 year of the soap tower there is failure of proof and the contention is without merit. In connection with this contention, however, petitioner might have offered evidence relating to the useful life of the spray tower. It was petitioner's burden of proof to do so. If 15 years is not the useful life of the tower and if 10 years is not the useful life of the heat treating facilities in the tower, as the respondent has determined, petitioner should have established what the useful life of each is so that a proper rate of depreciation could be established. We have the same situation with respect to the other items of machinery and equipment the cost of which is included in the the sum of $10,338.58. Kamen testified that in 1951, during the Korean war, petitioner received one contract from the Quarter-master (branch of Government unknown) for 6,000,000 pounds of soap in the making of which the soap frames were used. The record shows that other items were used after the taxable year. In many respects the evidence about the use of these other depreciable items is very unsatisfactory. Again, the evidence does not establish that all or any of *167 these items became obsolete in the taxable year. The evidence does not establish that the items had a useful life of less than 10 years. Some of Kamen's testimony suggests that orders for some of the many products which petitioner makes have declined in recent years as well as in the taxable year due to competition of other soap manufacturers. Such testimony is general and is insufficient to support some of petitioner's contentions. Furthermore, the record does not establish that the soap tower and other items are not in use today. It is held, upon the entire record, that petitioner has failed to establish useful life of items to be less than 15 or 10 years. The respondent's determinations of the depreciation deductions for the taxable year are sustained. Issue 2: Rent. - Section 23(a)(1)(A) allows deduction of ordinary and necessary expenses paid or incurred in the taxable year in carrying on the taxpayer's business. Deduction is allowed also of "rentals and other payments required to be made as a condition to the continued use or possession, for the purposes of the trade or business, of the property." (Italics added.) In , *168 affirming , the Court stated the rule of law to be as follows, at p. 484: "* * * The statute contains no express limitation with respect to the reasonableness of the amounts as a condition to deduction, but rentals or other payments for the use of property which are excessive in amount, taking into consideration all the facts of the particular case, do not constitute ordinary and necessary business expenses, or payments required to be made as a condition to the continued use of the property." Under these circumstances the Commissioner may inquire into and disallow payments which a taxpayer made in excess of the amount which he would be "required" to pay as rent. See, . When there is a close relationship between the lessor and the lessee and in addition there is no arm's-length dealing between them, an inquiry into what constitutes a reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been "required" to pay had he dealt at arm's-length with a stranger. ; ; *169 ; , affd. per curiam, ; . The petitioner paid Globe in the taxable year $55,250.03. The respondent determined that $19,337.51 was unreasonable and excessive, and allowed deduction of only $35,912.52. Under all of the circumstances, it was incumbent upon petitioner to prove that the disallowed portion of the rental deduction was reasonable in amount. , affd. per curiam . We are not assisted by independent disinterested testimony about a fair and reasonable rental for the premises involved. Petitioner relies entirely upon the testimony of Abraham Kamen which is to the effect that he considered $55,250 to be a reasonable rental for the taxable year. His testimony has been given all of the weight possible even though it is from an interested party, bearing in mind, of course, that this opinion is from an interested party. Also, it is recognized that the manager and president of a corporation is entitled to use his judgment in deciding the various matters *170 involved in his own management of a business. But the crux of the question to be decided is whether petitioner would be "required" to pay $55,250 for the continued use of the premises dealing at arm's-length. Account has been given to the fact that the 1944 lease required payment of $81,500 rental and petitioner paid less to Globe in the taxable year. But there is no proof that in 1944, $81,500 was a rental which petitioner would be required to pay in an arm's-length transaction. In fact, $81,500 was an extremely high return to Globe on property which cost Globe $138,088. The record lacks many pertinent facts such as these: The record does not show the fair market value in 1946 of the Globe property or of the space petitioner rented. It does not show the rate of rentals charged in 1946 for comparable space in the vicinity of Globe's property. It does not show Globe's expenses of carrying and maintaining the rented space, or the amount of insurance carried by Globe in 1946. Kamen testified that for an earlier year a revenue agent had questioned the reasonableness of the rent paid by the partnership and that he had then inquired about rental rates of two realty brokers in Akron. *171 Kamen's testimony was general, it was uncorroborated, it did not refer to any comparable property, and it was in part, at least, hearsay. Kamen asserted that he had general knowledge of rental rates charged in Barberton or the vicinity but, again, his testimony was vague and general. Furthermore, he has not proved through his testimony that rental rates to which he referred were for comparable property. For example, he testified about rental rates for storage space in Akron, which obviously is not comparable to Globe's industrial, factory property. Another fact in the record militates against petitioner. For example, rent of $55,250, paid for 2 1/2 years would more than recover the cost of all of Globe's property, and it would be substantially above the adjusted basis in 1946 of the property after depreciation. Kamen gave no explanation of how he arrived at his conclusion that $55,250 constituted a reasonable rental. In short, there is not sufficient evidence in the record to enable us to conclude that the entire sum claimed as rental expense, or any part thereof in excess of $35,912.52 per year, was reasonable in amount. We must, therefore, sustain respondent's partial disallowance. *172 ; Cf. , affirming a Memorandum Opinion of this Court [, where it was pointed out that the burden of proof imposed by the statute to permit deductions for rentals is onerous. Petitioner's burden of proof here is one which has the particular aspect of the stockholders' control of two corporations, both the lessor and the lessee. See, The tax is as sensitive to deductions, directly, as the temperature is to heat and cold. Where the result of payment of an excessive amount, for which deduction is claimed, could achieve a shifting of income from one corporation to another corporation, both being controlled by the same stockholders, with tax benefit, the taxpayer's burden of proof is to be met with the degree which will clearly satisfy the standard imposed by the statute. That deductions are a matter of legislative grace needs no emphasis. Issue 3: Expense of $2,000. - Respondent admits that petitioner paid Barrett the sum of $2,000 in the taxable year. The evidence *173 establishes that Barrett rendered cost accounting services to petitioner and advised petitioner about the proper way of figuring its costs for the purpose of preparing bids for Government contracts. This was an ordinary and necessary business expense. It is deductible under section 23(a)(1)(A). Respondent's disallowance of the deduction is overruled. Decision will be entered under Rule 50.